UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEADRIA MICHELLE ROGERS,

                   Plaintiff,

                                                               Case # 16-CV-6349-FPG

v.

                                                               DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                   Defendant.

Deadria Michelle Rogers ("Rogers" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On September 18 and October 15, 2012, Rogers applied for SSI and DIB with the Social Security Administration ("the SSA"). Tr.[2] 151-58. She alleged disability since June 7, 2012 due to malignant essential hypertension, migraines, back pain, and shoulder and hand arthritis. Tr.

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

192. On July 22, 2014, Rogers and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Michael W. Devlin ("the ALJ"). Tr. 46-70. On October 20, 2014, the ALJ issued a decision finding that Rogers was not disabled within the meaning of the Act. Tr. 28-40. On March 31, 2016, the Appeals Council denied Rogers's request for review. Tr. 1-7. Thereafter, Rogers commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I.  The ALJ's Decision

The ALJ's decision analyzed Rogers's claim for benefits under the process described above.  At step one, the ALJ found that Rogers had not engaged in substantial gainful activity since July of 2013.  Tr. 31.  At step two, the ALJ found that Rogers has the following severe impairments: spinal derangement with lower back pain, left shoulder impairment, hypertension, migraine headaches, and obesity.  Tr. 31-33.  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment.  Tr. 34.

Next, the ALJ determined that Rogers retained the RFC to perform sedentary work[3] with additional limitations.  Tr. 34-39.  Specifically, the ALJ found that Rogers can frequently reach, handle, and finger bilaterally; can occasionally push and pull 10 pounds, climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and cannot climb ladders, ropes, or scaffolds.  Tr. 34.

At step four, the ALJ relied on the VE's testimony and concluded that Rogers is unable to perform her past relevant work.  Tr. 39.  At step five, the ALJ relied on the VE's testimony and found that Rogers can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience.  Tr. 39-40.  Specifically, the VE testified that Rogers could work as a preparer and order clerk.  Tr. 40.  Accordingly, the ALJ concluded that Rogers was not "disabled" under the Act.  Tr. 40.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

## II. Analysis

Rogers argues that remand is required because the ALJ failed to develop the record.[4] ECF No. 11-1, at 15-22. Specifically, Rogers asserts that there was a gap in the record as to her mental impairments and that the ALJ used his lay opinion to determine that her mental impairments did not affect her ability to work. *Id.* The Court agrees.

## I. Medical Evidence Related to Rogers's Mental Impairments

The subjective and objective evidence demonstrates that Rogers had mental health impairments. Rogers testified at her hearing, for example, that she had been "having a lot of anxiety" that made it "hard to concentrate." Tr. 58. A May 21, 2012 treatment note indicated that Rogers was "stressed" and "having difficulty with work." Tr. 374.

On July 17, 2014, Rogers reported to Licensed Medical Social Worker Natalie McLarenneil ("LMSW McLarenneil") that she was "overwhelmed, anxious, and depressed." Tr. 655. LMSW McLarenneil noted that Rogers had a history of abuse and domestic violence, suicide attempts, overdosing on muscle relaxers, and cutting her wrists. *Id.* Rogers's symptoms included crying spells, feeling on edge, a sense of impending doom, racing thoughts, depressed mood, uncontrolled worry, paranoia, and negative rumination. *Id.* Rogers was paranoid that "people are talking about her, which results in her getting into altercations." *Id.* Rogers also reported that her depressive and anxious episodes were circumstantial and stress-related. *Id.* LMSW McLarenneil noted that she thought Rogers's partner "may be emotionally abusive" but that Rogers "does not identify him this way [and] would benefit from education on different types of abuse." Tr. 657.

---

[4] Rogers advances another argument that she believes warrants reversal of the Commissioner's decision. ECF No. 11-1, at 22-27. However, the Court will not address that argument because it disposes of this matter based on the ALJ's failure to develop the record.

LMSW McLarenneil performed a mental status examination and reported that Rogers was malodorous; had indirect eye contact; displayed anxious mood; had circumstantial and tangential thought processes and negative and preoccupied thought content; and displayed only "fair" concentration and impulse control, "limited" insight," and "impaired" to "moderate" judgment. Tr. 658. LMSW McLarenneil noted that Rogers had major depressive symptoms and deteriorated coping and problem-solving skills, displayed impulsivity and recklessness, and felt trapped, hopeless, and helpless. *Id.* LMSW McLarenneil diagnosed Rogers with chronic adjustment disorder with mixed anxiety and depressed mood. Tr. 659. She noted that Rogers was to follow up for individual therapy. Tr. 660.

On August 13, 2014, Rogers's treating physician Pricilla Martin, M.D. ("Dr. Martin") opined that Rogers was unable to meet competitive standards in maintaining regular attendance, being punctual within customary tolerances, and performing at a consistent pace without an unreasonable number and length of rest periods. Tr. 1259. Dr. Martin indicated that Rogers would be off task more than 20% of the time during an eight-hour workday, that her impairments were likely to produce "good" and "bad" days, and that she was likely to be absent from work due to her impairments or treatment more than four days per month.[5] *Id.*

## II. ALJ's Step Two Analysis and Failure to Consider Nonsevere Impairment in RFC Analysis

Here, the ALJ found at step two that Rogers's depression was a nonsevere impairment. Tr. 32. He reasoned that "[a]lthough there is some indication of stress and discussion of mental health counseling with a social worker, the record does not provide objective evidence supporting [Rogers]'s allegations that depression impacts her functioning." *Id.* (citing Tr. 413). The ALJ

---

[5] The Court notes that Dr. Martin's opinion seems to indicate that Rogers's issues with attendance, punctuality, and pace—which are related to one's mental ability to work—were due to her physical and not her mental impairments.

summarized part of LMSW McLarenneil's assessment and concluded that "these allegations were very recently documented and there is insufficient treatment history or other objective evidence to support these alleged symptoms or the impact on [Rogers]'s functioning." *Id.* (citing Tr. 655). The ALJ further noted that although LMSW McLarenneil found that Rogers "was suffering from anxiety and depression and scheduled [her] for continued therapy, there is no indication that [she] continued such treatment or records of these sessions." *Id.* (citing Tr. 660).

When an ALJ finds that a claimant has nonsevere impairments, like the ALJ did here, the ALJ must consider those impairments when he or she assesses the claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(2). Remand is required when the ALJ fails to account for the claimant's nonsevere impairments when determining his or her RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order); *Ames v. Berryhill*, No. 16-CV-316-FPG, 2017 WL 1276706, at *3 (W.D.N.Y. Apr. 6, 2017).

Here, although the ALJ's step two conclusion contained a boilerplate statement that he considered Rogers's nonsevere impairments when creating the RFC assessment, his RFC analysis does not discuss Rogers's depression or explain why the RFC lacked any related mental limitations. Tr. 33, 34-40. The ALJ did cite Rogers's Global Assessment of Functioning ("GAF") score of 60 and noted that it indicated "moderate symptoms," but he did not tie that score to Rogers's depression or indicate how it would or would not affect her ability to work. Tr. 38 (citing Tr. 660). Thus, it is impossible for Rogers or the Court to know whether the ALJ considered her depression when he determined her RFC and remand is required.

## III. Failure to Develop the Record

Rogers asserts that in light of the evidence outlined above and the ALJ's step two determination that her depression was nonsevere, the ALJ was obligated to develop the record by

7

obtaining a medical opinion as to her mental ability to perform work-related functions. The Court agrees.

The ALJ has an affirmative duty to develop the administrative record due to the "non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must "make every reasonable effort" to develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed his or her application. 20 C.F.R. §§ 404.1512(b), 416.912(b). Remand is warranted if the ALJ fails to fulfill his or her duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

Moreover, it is well settled that "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's . . . impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (citation omitted).

As mentioned above, Dr. Martin evaluated Rogers's mental abilities and aptitudes to perform unskilled work, although her opinion seemed to indicate that Rogers's limitations in those areas were due to her physical and not her mental impairments. Tr. 1259-60. Nonetheless, Dr. Martin's assessment was the only opinion in the record as to Rogers's mental ability to perform

work-related functions on a regular and continuing basis.[6] The ALJ discounted Dr. Martin's opinion (Tr. 38) and therefore had no medical opinion to rely on when considering whether Rogers's mental impairments interfered with her ability to work. *See, e.g.*, *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (the ALJ's rejection of the treating physician's opinion necessitated remand because the absence of any other medical assessment created an evidentiary gap in the record).

Instead of developing the record as to Rogers's mental impairments, the ALJ's decision relied heavily upon the fact that the record lacked sufficient evidence and treatment history. Social Security Ruling 96-7p warns, however, that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7p, Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *7 (S.S.A. July 2, 1996) (effective July 2, 1996 to Mar. 28, 2016). In the mental health context, "[c]ourts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'" *Bick v. Colvin*, 14-CV-791S, 2016 WL 3995716, at *3 (W.D.N.Y. July 26, 2016).

---

[6] *See* S.S.R. 96-8p, Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."); *see also* 20 C.F.R. §§ 404.1545(c), 416.945(c) (the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing his or her mental capacity).

Given the lack of a medical opinion as to Rogers's mental ability to work, the Court finds that there was an "obvious gap" in the record and that the ALJ was therefore obligated to seek additional evidence. Accordingly, remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 14, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court